J-S14015-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
:       PENNSYLVANIA
       Appellee       :
:
       v.          :
:
MICHAEL WILLIAMS, : 
:
       Appellant      : No. 735 EDA 2014

Appeal from the Judgment of Sentence February 12, 2014,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0010059-2013

BEFORE: DONOHUE, OLSON and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:             **FILED APRIL 21, 2015**

Michael Williams ("Williams") appeals from the February 12, 2014 judgment of sentence entered by the Court of Common Pleas, Philadelphia County, following a conviction of possession with intent to deliver a controlled substance ("PWID"), 35 P.S. § 780-113(a)(30), and knowingly and intentionally possessing a controlled substance ("K&I"), 35 P.S. § 780-113(a)(16). For the reasons set forth herein, we affirm Williams' conviction, but vacate his judgment of sentence and remand for resentencing.

The facts and procedural history is as follows:

> On July 18, 2013, at 12:45 p.m., Officer [David] Rausch was conducting surveillance on the 2300 block of Nichols Street in the city and county of Philadelphia, Pennsylvania. The officer observed [Williams] standing outside the row homes between 2314 and 2316 Nichols Street, "talking to a couple of gentlemen on the block." "At approximately 12:50 [p.m.], an unknown black male [wearing] a white

and blue shirt and black pants approached [Williams] to engage in a brief conversation." The "unknown" male handed [Williams] money, which [Williams] placed in the back pocket of his shorts. [Williams] then walked across the street and entered an abandoned row home located at 2319 Nichols Street. [Williams] entered the premises through an unlocked door and remained inside for about twenty seconds. When [Williams] emerged, he walked back to the unknown male and "handed him small items," after which the individual walked away. Officer Rausch described this individual to back-up officers, but the officers could not locate him after he departed from [Williams]. (N.T., 2/10/14, pp. 14-18).

A few minutes later, at approximately 1:00 p.m., another black male wearing a blue shirt and tan pants approached [Williams] and handed him money, which [Williams] placed in the back pocket of his shorts. As before, [Williams] walked across the street, entered 2319 Nichols Street, and remained inside for about twenty seconds. When [Williams] emerged, he walked back to the unknown male and handed him "small items." Following this transaction, the unknown male walked away and was neither located nor stopped by back-up officers. (N.T., 2/10/14, pp. 18-19).

At approximately 1:15 p.m., another individual approached [Williams] and handed him money, which [Williams] placed in the back pocket of his shorts. Same as the previous two transactions, [Williams] walked across the street, entered 2319 Nichols Street, and remained inside for about twenty seconds. When [Williams] emerged, he walked back to the individual and handed him "items." Officer Rausch described this individual to back-up officers, including Officer [Steven] Shippen, who subsequently detained and identified the individual as Dwayne Carson. Officer Shippen recovered a silver metal container from Mr. Carson, which contained two Xanax pills, four Methadone pills, and one Roxicodone pill. (N.T., 2/10/14, pp. 19-20, 29).

Following his transaction with Mr. Carson, [Williams] walked down Nichols Street toward Ridge Avenue, upon which Officer Rausch directed back-up officers to apprehend him. The arresting officer recovered $185.00 from the back pocket of [Williams'] pants, and was informed by [Williams] that [Williams] lived not at 2319 Nichols Street -- which he was seen entering three times -- but several blocks away at 2812 West Marsden Street. The arresting officer recovered no narcotics from [Williams'] person (N.T., 2/10/14, pp. 19-20, 27, 37).

Officers Rausch and [John] Mulqueeney (among other officers) subsequently searched the premises at 2319 Nichols Street. [According to] Officer Mulqueeney [] the sole piece of furniture in the premises was a couch located about ten feet from the front door. The residence "was obviously abandoned" and was covered with trash "all over the place." Officer Mulqueeney observed an "amber pill bottle" sitting beside a couch cushion, which contained sixty-six (66) Endoset pills weighing a total of 28.64 grams. When Officer Mulqueeney searched beneath the couch cushion, he discovered "one clear plastic baggie containing five clear heat-sealed packets of ... crack cocaine," which weighed less than 2 grams. Although police officers discovered no paperwork linking [Williams] or anyone else to the abandoned property, [Williams] was the only person whom Officer Rausch observed enter or exit the premises. (N.T., 2/10/14, pp. 33-38).

Trial Court Opinion, 8/22/14, at 2-4.

Williams was charged with PWID and K&I. On February 10, 2014, Williams waived his right to a jury trial and proceeded to a bench trial. At trial, the Commonwealth presented the testimony of Officers Rausch, Shippen, and Mulqueeney. Williams did not offer any witness or evidence.

At the conclusion of the Commonwealth's case, the trial court found Williams guilty of both charges.

On February 12, 2014, the trial court sentenced Williams to a mandatory minimum of five to ten years of incarceration on the charge of PWID. The trial court did not impose a penalty on the K&I charge. Williams did not file a post-sentence motion challenging his convictions or sentence.

On March 5, 2014, Williams filed a timely notice of appeal. On July 1, 2014, Williams filed a statement of matters complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 1925(b). On appeal, Williams raises the following issues for our review:

> 1. [Whether] the verdict is against the weight of the evidence because the evidence was not beyond a reasonable doubt to convict [Williams] of Possessing With the Intent to Deliver the narcotics inside the abandoned house[?]
>
> 2. [Whether] the evidence was insufficient to support the verdict because there was insufficient evidence to convict [Williams] of the mandatory amount of narcotics recovered from inside the abandoned house[?]

Williams' Brief at 3.

For his first issue on appeal, Williams argues that the trial court's verdict is against the weight of the evidence. *Id*. at 8-10. Williams asserts that the trial court "abused [its] discretion by accepting the Commonwealth's version of the events without considering the lack of evidence or

- 4 -

contradictory evidence recovered from the different parties and property." *Id*. at 10.  Williams contends that the verdict is against the weight of the evidence because the Commonwealth failed to introduce evidence that Williams sold narcotics to the first two individuals he was observed interacting with, the narcotics recovered from the third alleged buyer did not match the narcotics found inside the house, and there was no evidence linking Williams to the house containing the narcotics.  *Id*. at 9-10.

After reviewing the record, we conclude that Williams waived this issue for appellate review.  Rule 607 of the Pennsylvania Rules of Criminal Procedure provides that "a weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing."  Pa.R.Crim.P. 607.  In this case, Williams did not file a post-sentence motion.  Moreover, Williams did not preserve this issue in an oral or written motion prior to sentencing.  We note that while the trial court makes no mention of waiver and addresses Williams' claim in its 1925(a) opinion, this Court has established that "[f]ailure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion."  *Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa. Super. 2014) (citing *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012)).  Accordingly, we will not address the merits of Williams' claim.

For his second issue on appeal, Williams presents a sufficiency of the evidence claim. Williams' Brief at 10-12.[1] Williams asserts that the Commonwealth failed to prove that he "was in possession or constructive possession of the narcotics found in the 'abandoned property' beyond a reasonable doubt." *Id.* at 11.

Our standard of review in assessing the sufficiency of the evidence is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire

---

[1] We note that in his concise statement of matters complained of on appeal, Williams raises a sufficiency of the evidence claim, stating that "[t]here was insufficient evidence to convict [him] of the mandatory amount of narcotics recovered from inside the abandoned house." Although we could find this statement to be too vague to permit review, Williams' brief presents argument relating to his PWID conviction, claiming that "the Commonwealth did not prove that [he] was in possession or constructive possession of the narcotics found in the 'abandoned property' beyond a reasonable doubt." Williams' Brief at 11. Accordingly, we address the merits of his claim.

record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Helsel*, 53 A.3d 906, 917-18 (Pa. Super. 2012) (citing *Commonwealth v. Bricker*, 41 A.3d 872, 877 (Pa. Super. 2012)).

In order to sustain a conviction of PWID, "the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it." *Commonwealth v. Bricker*, 882 A.2d 1008, 1015 (Pa. Super. 2005). It is well settled that "[i]n narcotics possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband." *Commonwealth v. Vargas*, __ A.3d ___, 2014 WL 7447678, at *8 (Pa. Super. Dec. 31, 2014) (quoting *Commonwealth v. Thompson*, 428 A.2d 223, 224 (Pa. Super. 1981)). In this case, the police did not discover the narcotics on Williams' person. Thus, we must determine whether the Commonwealth sufficiently established that Williams had constructive possession of the narcotics.

This Court has established that

[c]onstructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined

"conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances."

*Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012) (quoting *Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004) (internal citations omitted)). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." *Brown*, 48 A.3d at 430 (citing *Commonwealth v. Markman*, 916 A.2d 586, 598 (Pa. 2007)).

In this case, the record reflects that the narcotics were discovered inside of an abandoned house located at 2319 Nichols Street. N.T., 2/10/14, at 23-24, 34-35. Officer Rausch testified that Williams did not use a key to enter the property. *Id.* at 16. Officer Mulqueeney further testified that "[t]he front door was open, it was shut, but you could tell it wasn't latched. It was a wooden door you could push open[.]" *Id.* at 35. The police officers did not find anything in the house linking Williams to the property. *Id.* at 26. Thus, the record does not contain evidence to establish exclusive control over the property. In these situations, "where more than one person has equal access to where drugs are stored, presence alone in conjunction with such access will not prove conscious dominion over the contraband. …. '[T]he Commonwealth must introduce evidence connecting [the defendant]

to the specific room or areas where the drugs were kept.'" **Vargas**, 2014 WL 7447678, at *8 (quoting **Commonwealth v. Ocasio**, 619 A.2d 352, 354-55 (Pa. Super. 1993)). Upon review of all the facts and circumstances in this case, we conclude that the evidence presented at trial was sufficient to connect Williams to the specific area where the police officers discovered the narcotics to prove that he had control and possession of them.

Officer Rausch testified that he observed Williams engage in three separate hand-to-hand transactions wherein Williams would accept money from an individual, walk into the front door of the abandoned house at 2319 Nichols Street, exit the property approximately twenty seconds later, and hand the individual small items. **Id.** at 15-19. The police officers testified that they discovered five heat-sealed packets of crack cocaine and an unlabeled "amber pill bottle" containing sixty-six (66) pills, located inside the abandoned house, nestled in a couch cushion. **Id.** at 23-24, 34-35. The couch was located inside of the abandoned house, approximately ten feet from the door. **Id.** at 34. The house contained no other furniture. **Id.** at 35. The police officers' testimony that Williams entered the house for a mere twenty seconds therefore establishes that Williams only had enough time to access those areas of the house close to the door. Thus, the police officers' testimony regarding the close proximity of the front door to the couch and the testimony that the house was otherwise vacant, is sufficient

to establish circumstantial evidence connecting Williams to the specific area where the narcotics were found.

Moreover, although the house located at 2319 Nichols Street was abandoned and unsecured in that no key was needed to enter and the door was not latched, the police officers testified that no one other than Williams entered or exited the property during the relevant period in question. This evidence establishes that although Williams was not the only person with access to the property generally, Williams was the only person with access to the property at the time the police officers discovered the narcotics. In *Commonwealth v. Hutchinson*, 947 A.2d 800 (Pa. Super. 2008), this Court determined that the appellee "had the ability and intent to exercise conscious control and dominion over the [narcotics] … when only he had access to the same at the relevant time." *Id*. at 807. Pursuant to our standard of review, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we are not persuaded that the evidence was so weak and inconclusive so as to be insufficient to establish that Williams constructively possessed the narcotics discovered in the abandoned house to support a conviction of PWID. Accordingly, we do not disturb the trial court's determination in this respect.

Finally, we note that in his brief, Williams references the validity of his sentence and states that "[i]f this Court wishes to retroactively apply *Commonwealth v. Newman*, [99 A.3d 86, 97-98, 103 (Pa. Super. 2014)

(en banc) (finding the imposition of a mandatory minimum sentence unconstitutional and remanding the case "for the re-imposition of sentence without consideration of any mandatory minimum sentence")], Appellant would be pleased to get a new sentencing hearing without any mandatory minimum being applied." Williams' Brief at 11. In its opinion, the trial court does not address the merits of any challenge to Williams' sentence. The trial court presumed that because Williams' claim of error was vague and because counsel did not dispute the five to ten year mandatory minimum or the weight of the narcotics discovered at the abandoned house, Williams' challenge was directed to the sufficiency of the evidence to sustain his PWID conviction.

Although Williams failed to preserve a challenge to his sentence on appeal, this Court has established that "a challenge to a sentence premised upon [mandatory minimum sentences] implicates the legality of the sentence and cannot be waived on appeal." *Newman*, 99 A.3d at 90. Moreover, it is well settled that this Court may address the legality of a defendant's sentence *sua sponte*. *Commonwealth v. Watley*, 81 A.3d 108, 118 (Pa. Super. 2013) (en banc), *appeal denied*, 95 A.3d 277 (Pa. 2014). Accordingly, we will address the legality of Williams' sentence.

The trial court sentenced Williams to a mandatory minimum sentence of five to ten years of incarceration under 18 Pa.C.S.A. § 7508(a)(2)(ii), which provides, in relevant part:

§ 7508. Drug trafficking sentencing and penalties

**(a) General rule.**—Notwithstanding any other provisions of this or any other act to the contrary, the following provisions shall apply:

\* \* \*

(2) A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance or a mixture containing it is classified in Schedule I or Schedule II under section 4 of that act and is a narcotic drug shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:

\* \* \*

(ii) when the aggregate weight of the compound or mixture containing the substance involved is at least ten grams and less than 100 grams; three years in prison and a fine of $15,000 or such larger amount as is sufficient to exhaust the assets utilized in the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: five years in prison and $30,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity;

\* \* \*

18 Pa.C.S.A. § 7508(a)(2)(ii).

In ***Alleyne v. United States***, 133 S.Ct. 2151 (U.S. 2013), the United States Supreme Court held that facts that increase mandatory minimum sentences "must be submitted to the jury and found beyond a reasonable

doubt." *Id.* at 2155.[2]  This Court subsequently determined that the decision in *Alleyne* renders "Pennsylvania mandatory minimum sentencing statutes that do not pertain to prior convictions[] constitutionally infirm insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the evidence standard."  *Watley*, 81 A.3d at 117 (footnote omitted).

In *Thompson*, this Court addressed the constitutionality of the mandatory minimum sentence that is at issue in the case at bar, holding that section 7508(a)(2)(ii) cannot be constitutionally applied in light of *Alleyne*, as "the facts that permit[] application of [the] mandatory sentence [are] not determined by the fact-finder nor proven beyond a reasonable doubt."  *Thompson*, 93 A.3d at 493-94.  This Court thereafter determined that section 7508 is unconstitutional in its entirety under *Alleyne*.  *See Fennell*, 105 A.3d at 20; *see also Cardwell*, 105 A.3d at 754-55.  In reaching its conclusion, the *Fennell* and *Cardwell* Courts relied upon the holding in *Newman* wherein this Court determined that "it is manifestly the province of the General Assembly to determine what new procedures must be created in order to impose mandatory minimum sentences in

---

[2]  This Court recently noted that under the Due Process Clause, a defendant that elects a non-jury trial is "entitled to have the extra element of the aggravated offense found by the factfinder beyond a reasonable doubt pursuant to *Alleyne*."  *Commonwealth v. Fennell*, 105 A.3d 13, 17 (Pa. Super. 2014); *Commonwealth v. Cardwell*, 105 A.3d 748, 751 (Pa. Super. 2014).

Pennsylvania following *Alleyne*." *Newman*, 105 A.3d at 18. As this Court has provided an express determination that the statute under which the trial court sentenced Williams is unconstitutional, we are bound by the result. Accordingly, we conclude that the trial court's sentence pursuant to section 7508(a)(2)(ii) is illegal and must be vacated.

Judgment of sentence vacated. Case remanded for resentencing without imposition of a mandatory minimum term. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2015